UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| M.G. Longstreet, LLC,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>James Hardie Building Products, Inc.,<br><br>　　　　　Defendant. | Case No. 21-cv-1213 (SRN/ECW)<br><br><br>**Order** |

Francis J. Rondoni and Jennifer J. Crancer, Chestnut Cambronne PA, 100 Washington Avenue South, Suite 1700, Minneapolis, MN 55401, for Plaintiff.

Wyatt S. Partridge, Foley & Mansfield, PLLP, 250 Marquette Avenue, Suite 1200, Minneapolis, MN 55401, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant's Motion to Dismiss [Doc. No. 8]. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court grants in part, and denies in part, the motion.

I.     BACKGROUND

　　A.　　The Parties

Plaintiff M.G. Longstreet owns three multifamily apartment buildings in Maple Grove, Minnesota. (Am. Compl. [Doc. No. 14] ¶ 2.) The three apartment buildings are known as the Arbor Glen Apartments (the "Apartments"). (*Id.*)

Defendant James Hardie Building Products, Inc. ("James Hardie") produces, markets, and sells fiber-cement siding products for residential homes, commercial

1

buildings, and other structures. (*Id.* ¶¶ 3, 6–7.) One of James Hardie's products is the Sentry fiber-cement plank siding panel ("Sentry Siding"). (*Id.* ¶ 9.)

### B. The Parties' Contract

In 2002, M.G. Longstreet purchased Sentry Siding from James Hardie. (*Id.* ¶ 18.) The sale included a "25-Year Express Limited Transferable Product Warranty" ("Express Limited Warranty"). (*Id.* ¶ 10, Ex. A.) As relevant here, the Express Limited Warranty provides coverage as follows:

> **1. LIMITED WARRANTY COVERAGE:** James Hardie Building Products, Inc. ("Hardie") warrants . . . to the purchaser . . . that when manufactured, the Hardie Fiber-Cement Plank Siding, Panel or Soffit Product (Sentry™, the "Product") complies with ASTM C1186, as Grade II, Type A and is free from defects in material and manufacture. When used for its intended purpose, properly installed and maintained according to Hardie's published installation instructions, the Product for a period of 25 years from the date of purchase will (a) remain non-combustible, (b) resist damage caused by hail or termite attacks, and (c) will not crack, rot or delaminate.
>
> If during the Warranty period, any Product proves to be defective, Hardie, in its sole discretion, shall replace the defective Product before it is installed, or, during the first 10 years, reimburse the covered person for resulting losses up to twice the retail cost of the defective portion of the Product. During the 11th through the 25th year, the warranty payment shall be reduced by 6.75% each year such that after the 25th year no warranty shall be applicable . . . .
>
> Hardie's replacement of the defective Product or granting of a refund pursuant to Section 1 of this Warranty SHALL BE THE SOLE EXCLUSIVE REMEDY available to the covered person with respect to any defect.

(*Id.*) The Express Limited Warranty also disclaims other warranties, as outlined below:

> **4. DISCLAIMER:**
>
> The statements in this Warranty constitute the only warranty extended by Hardie for the Product. HARDIE DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED

2

>   **WARRANTIES OF MERCHANTABILITY** OR FITNESS FOR A PARTICULAR PURPOSE . . . .

(*Id.*)

### C.  The Alleged Defects

In December 2015 and November 2016, INSPEC Engineering firm inspected the Apartments. (*Id.* ¶ 21.) M.G. Longstreet first learned about "[d]elaminating paint and siding" at various locations and "[b]roken siding corners" from INSPEC. (*Id.*) INSPEC took pictures and shared their observations with M.G. Longstreet. (*Id.* ¶¶ 21–22.)

### D.  The Warranty Claim

On December 2, 2016, M.G. Longstreet submitted a warranty claim to James Hardie. (*Id.* ¶ 23.) In support of its claim, M.G. Longstreet attached its invoices for the Sentry Siding, along with INSPEC's photographs and findings. (*Id.* ¶ 24.) James Hardie reviewed the claim. (*Id.* ¶ 25.)

#### 1.  Defendant's Offer

James Hardie responded to the warranty claim by offering M.G. Longstreet $86,000. (*See id.* ¶ 26, Ex. C.) On May 3, 2017, M.G. Longstreet requested that James Hardie explain how it calculated the offer amount. (*See* Am. Compl. Ex. C at 1.) James Hardie confirmed that it calculated the amount using the formula outlined in the Express Limited Warranty. (*Id.*)

Next, M.G. Longstreet consulted with INSPEC. (*Id.* ¶ 27.) Following those discussions, M.G. Longstreet obtained a siding remediation estimate (i.e., an estimate to repair and replace the Sentry Siding). (*Id.* ¶ 28.) The estimated cost to furnish labor and materials to (1) remove the Sentry Siding, (2) repair harm to the Apartments allegedly

3

caused by the Sentry Siding, and (3) install new siding, totaled $1,035,715. (*Id.* ¶ 29.) M.G. Longstreet shared this estimate with James Hardie, which refused to pay that amount. (*Id.* ¶ 30.)

### 2. M.G. Longstreet Replaces the Sentry Siding

In late summer 2019, M.G. Longstreet replaced the Sentry Siding. (Am. Compl. ¶¶ 31–33.) During the removal, M.G. Longstreet learned "for the first time" of additional and "significantly greater damage" to the Apartments, allegedly from the Sentry Siding. (*Id.* ¶ 33.) In response, M.G. Longstreet hired an expert to "analyze the degraded and defective Siding" and "render an opinion as to its cause." (*Id.* ¶ 34.)

### E. The Complaint

About 19 months later, on April 27, 2021, M.G. Longstreet filed the Complaint in Minnesota state court. (Notice of Removal [Doc. No. 1] Ex. A.) M.G. Longstreet asserts that "James Hardie has failed, refused, and/or neglected to make [M.G. Longstreet] whole for the expenses to remedy the damages sustained as a result of its faulty and negligent workmanship." (Am. Compl. ¶ 46.) As such, M.G. Longstreet seeks compensatory damages, costs, and attorney fees for harm suffered from the defective Sentry Siding. (*Id.* ¶ 99.)

### F. Procedural Background

As noted above, M.G. Longstreet filed the Complaint in Minnesota state court. (Notice of Removal Ex. A.) The state-court Complaint, which is substantively the same as the Amended Complaint filed with this Court [Doc. No. 14], alleges six counts: (1) Breach of Express Warranty, (2) Negligence, (3) Breach of Implied Warranty of Fitness for a

Particular Purpose, (4) Breach of Implied Warranty of Merchantability, (5) Unlawful Trade Practices, and (6) False Advertising.

In response, James Hardie removed the action to this Court on May 13, 2021.[1] (Notice of Removal at 1–5.) One week later, James Hardie filed a motion to dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Def.'s Mot. Dismiss at 6, 27.) The parties submitted briefing, and the Court heard argument on August 10, 2021. (*See* Doc. Nos. 10–11, 15–20.)

## II.     DISCUSSION

### A.     Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true, and views those allegations in the light most favorable to the plaintiff. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.* In addition, the Court ordinarily does not consider matters outside the pleadings on a motion to dismiss. *See* Fed. R. Civ. P. 12(d). Matters outside the pleadings include "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings," as well as statements of counsel at oral argument

---

[1] The Court issued an Order to Show Cause [Doc. No. 21], requiring James Hardie to confirm that diversity jurisdiction exists in this case. James Hardie submitted the Affidavit of Conrad R. Adkins [Doc. No. 22]. Considering that affidavit and the absence of any objection by M.G. Longstreet, the Court believes diversity jurisdiction exists in this case.

5

that raise new facts not alleged in the pleadings. *Hamm v. Rhone-Poulenc Rorer Pharm., Inc.*, 187 F.3d 941, 948 (8th Cir. 1999) (quotation marks and citation omitted). The Court may, however, "consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record."[2] *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) (quotation marks and citation omitted).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must allege facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

Because the statute of limitations is an affirmative defense, dismissal under Rule 12(b)(6) is proper only if the defense is apparent on the face of the complaint. *See Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008) ("Bar by a statute of limitation is typically an affirmative defense, which the defendant must plead and prove. . . . [T]herefore the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense."). Thus, in considering the applicability of this defense, a court's review is limited to the complaint

---

[2] For purposes of this motion, the Court has considered the Amended Complaint and its attachments.

6

and any "public records and materials embraced by the complaint." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 983 (8th Cir. 2008).

### B.     Analysis

James Hardie seeks dismissal of all six counts. (Am. Compl. ¶¶ 48–99.) The Court considers each in turn.

#### 1.     Breach of the Express Limited Warranty (Count I)

To prove breach of an express warranty, the plaintiff must prove: "(1) the existence of a warranty, (2) breach of the warranty, and (3) causation of damages." *Phythian v. BMW of N. Am., LLC*, No. A11-40, 2011 WL 4435403, at *3 (Minn. Ct. App. Sept. 26, 2011) (citing *Peterson v. Bendix Home Sys., Inc.*, 318 N.W.2d 50, 52–53 (Minn. 1982)). On this motion to dismiss, the parties do not dispute that the Express Limited Warranty applies to M.G. Longstreet's purchase of the Sentry Siding; instead, the parties dispute what type of warranty it is, when the warranty claim accrued, and whether M.G. Longstreet gave adequate notice.

##### a.     The Express Limited Warranty

The parties dispute whether the Express Limited Warranty constitutes a "repair and replace warranty" or a "warranty of future performance." (*Compare* Def.'s Mem. [Doc. No. 15] at 8–10, *with* Pl.'s Opp'n [Doc. No. 16] at 13–18.) The type of warranty impacts the accrual date. *See* Minn. Stat. § 336.2-725(2) (providing that a breach of warranty claim accrues on "tender of delivery," except that a claim under a warranty of future performance "accrues when the breach is or should have been discovered"). To constitute a warranty of future performance, "the terms of the warranty must unambiguously indicate that the

7

manufacturer is warranting the future performance of the goods for a specified period of time." *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 823 (8th Cir. 1983) (analyzing a Missouri U.C.C. statute with identical language to Minn. Stat. § 336.2-725(2)); *Anderson v. Crestliner, Inc.*, 564 N.W.2d 218, 222 (Minn. Ct. App. 1997) ("A warranty of future performance of a product must expressly provide some form of guarantee that the product will perform in the future as promised." (quotation marks and citation omitted)).

Here, the Express Limited Warranty is a warranty of future performance. As relevant here, the Express Limited Warranty provides:

> **1. LIMITED WARRANTY COVERAGE:** . . . When used for its intended purpose, properly installed and maintained according to Hardie's published installation instructions, *the Product for a period of 25 years from the date of purchase will* (a) remain non-combustible, (b) resist damage caused by hail or termite attacks, and (c) will not crack, rot or delaminate.
>
> *If during the Warranty period*, any Product proves to be defective, Hardie, in its sole discretion, shall replace the defective Product before it is installed, or, during the first 10 years, reimburse the covered person for resulting losses . . . .

(Am. Compl. Ex. A (emphasis added).) The Express Limited Warranty explicitly references a future date: "25 years from the date of purchase." (*Id.*) And it promises that if the customer properly installs and maintains the Sentry Siding, it "will (a) remain non-combustible, (b) resist damage caused by hail or termite attacks, and (c) will not crack, rot or delaminate." What is more, the Express Limited Warranty labels the 25 years as the "Warranty period." (*Id.* ("If during the Warranty period . . . .").) Accordingly, the Court finds that the Express Limited Warranty is a warranty of future performance.

To be sure, this case involves an Express *Limited* Warranty.[3] Even so, the Court is unaware of case law that stands for the proposition that limiting the warranty converts it into a *de facto* repair and replace warranty. Instead, the Express Limited Warranty is like other warranties of future performance. For example, in *Crestliner*, the seller guaranteed to the first purchaser at retail that each new boat, including the hull and deck structure, "shall be free from any defect in material or workmanship for five years." 564 N.W.2d at 221. Likewise, in *Church of the Nativity of Our Lord v. WatPro, Inc.*, the seller promised to "maintain the . . . roof . . . in a watertight condition at its own expense for a period of five years . . . ." 491 N.W.2d 1, 3 (Minn. 1992), *overruled on other grounds by Ly v. Nystrom*, 615 N.W.2d 302 (Minn. 2000). Because both warranties explicitly promised performance on future dates, these courts found them to be warranties of future performance. *See Crestliner*, 564 N.W.2d at 223; *WatPro*, 491 N.W.2d at 6. In the same way, the Express Limited Warranty guarantees performance for 25 years from the date of purchase.

But, James Hardie argues, the Express Limited Warranty only provides that it will replace or reimburse the defective product—not maintain it. Courts have addressed similar arguments, explaining that such arguments confuse the issue of *remedy* with the issue of *type*. *See, e.g., R.W. Murray*, 697 F.2d at 823 ("We do not believe that the presence of language limiting the remedy to replacement of defective materials, by itself, is

---

[3] It only applies "[w]hen used for its intended purpose, properly installed and maintained according to Hardie's published installation instructions . . . ." (Am. Compl. Ex. A.)

determinative of the exact nature of the warranties in question."). Accordingly, the Express Limited Warranty is a warranty of future performance.

### b. The Accrual Date

Genuine issues of material fact are in dispute as to the date of accrual, precluding dismissal. A warranty claim must be commenced within four years of the date when the cause of action accrued. Minn. Stat. § 336.2-725(1). For a warranty of future performance, "the cause of action accrues when the breach is or should have been discovered." Minn. Stat. § 336.2-725(2). Courts have interpreted this to mean that the cause of action accrues "when the plaintiff discovers or should have discovered the defendant's refusal or inability to maintain the goods as warranted in the contract." *WatPro*, 491 N.W.2d at 6 (quotation marks and citation omitted). Minnesota courts have held that discovery of the warrantor's breach can occur at various times. *See, e.g.*, *id.* at 4, 7 (accruing when warrantor explicitly informed warrantee, after promising repairs, that it would not fulfill its obligations); *Crestliner*, 564 N.W.2d at 223 (accruing when warrantor informed warrantee that it would no longer attempt to fix the problem); *cf. Roitenberg v. Halley's Custom Homes, Inc.*, No. A06-1334, 2007 WL 2363880, at *4 (Minn. Ct. App. Aug. 21, 2007) (explaining that a warranty claim under Minn. Stat. § 327A.03 accrues when warrantor fails to respond to warrantee's notice); *Metro. Life Ins. Co. v. M.A. Mortenson Companies, Inc.*, 545 N.W.2d 394, 401 (Minn. Ct. App. 1996) (holding that a warranty claim under Minn. Stat. § 541.051 accrued when warrantor inspected the alleged issue but never promised to repair it).

Here, the Amended Complaint identifies multiple dates when the claim could have accrued. For example, it could have accrued shortly after December 2, 2016, when M.G.

Longstreet "submitted a warranty claim to James Hardie" and James Hardie offered to pay $86,000. (Am. Compl. ¶¶ 23, 26, Ex. C.) Alternatively, it could have accrued on May 3, 2017, when M.G. Longstreet knew James Hardie's position and requested that James Hardie explain how it calculated the offer. (*See* Am. Compl. Ex. C at 1.) It also could have accrued when James Hardie refused to pay the remediation estimate of $1,035,715. (*Id.* ¶ 29–30.) And possibly, it accrued in late summer 2019, when James Hardie observed the removal of the Sentry Siding, but did not offer to reimburse Plaintiff. (*Id.* ¶ 32.) On a motion to dismiss, such a material fact dispute precludes granting dismissal.

In urging the Court to dismiss, James Hardie cites *Day Masonry v. Indep. Sch. Dist. 347*, 781 N.W.2d 321 (Minn. 2010). (Def.'s Mem. at 8–12.) But *Day Masonry* does not lead to a different result; rather, it stands for the proposition that the warranty claim cannot accrue *before* the warrantee gives notice to the warrantor of the possible claim. 781 N.W.2d at 329. Applied here, the reasoning in *Day Masonry* supports a finding that M.G. Longstreet's claim did not accrue until December 2, 2016—nothing more.

This lawsuit commenced in April 2021. The warranty claim, therefore, must have accrued after April 2017 to be timely. Because the Amended Complaint alleges that the accrual date occurred after April 2017, the statute of limitations defense is not apparent from the face of the Amended Complaint. Accordingly, the Court denies Defendant's motion to dismiss Count I.[4]

---

[4] Defendant also asserts that Plaintiff failed to give timely notice of the alleged warranty claims, thus requiring dismissal. (Def.'s Mem. at 13–14.) Because a genuine

### 2. Negligence (Count II)

M.G. Longstreet alleges that James Hardie breached two duties beyond the contract: (1) "a duty . . . to exercise reasonable and ordinary care in its design, production, manufacture, warranting, and marketing" of the Sentry Siding, and (2) "a duty to ensure that the product it sold lived up to the promises and representations it made to consumers regarding the quality of the Siding and its long-lasting nature." (Am. Compl. ¶¶ 60–61.) But no authority establishes that either of those legal duties exists. Therefore, M.G. Longstreet's negligence claim fails as a matter of law.

Minnesota law provides that "a plaintiff asserting a negligence claim must establish the existence of a duty of care, a breach of that duty, and an injury proximately caused by the breach." *Boyd & Co., LLC v. Tom's Backhoe Serv., Inc.*, Civ. No. 17-cv-0178 (WMW/LIB), 2018 WL 740389, at *2 (D. Minn. Feb. 7, 2018) (citing *Doe 169 v. Brandon*, 845 N.W.2d 174, 177 (Minn. 2014)). Where "a contract provides the only source of duties between the parties, Minnesota law does not permit the breach of those duties to support a cause of action in negligence." *Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 584 (Minn. 2012) (quotation marks and citation omitted). Here, M.G. Longstreet asserts that James Hardie had duties beyond those in the contract, without citing any authority. (Am. Compl. ¶¶ 61–66; Pl.'s Opp'n at 24–29.) Like in *Boyd* and *Glorvigen*, the only duties here

---

issue of material fact exists as to when the claim accrued, the Court need not address the notice argument at this stage of the proceedings.

could arise from the contract, which means the negligence claim fails as a matter of law. Accordingly, the Court grants Defendant's motion to dismiss Count II.

### 3. Breach of Implied Warranty of Fitness for a Particular Purpose and Breach of Implied Warranty of Merchantability (Counts III and IV)

James Hardie moves to dismiss Counts III and IV, arguing that the implied warranties do not apply because the Express Limited Warranty explicitly disclaims them. (Def.'s Mem. at 21.) The Court agrees.

"Under Minnesota law, a written implied warranty of merchantability may be excluded or modified by using language that mentions merchantability and is conspicuous." *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1321–22 (D. Minn. 2018). Put another way, "[a]ny claim challenging an implied warranty of merchantability or fitness fails if the warranty has been disclaimed." *Cleveland v. Whirlpool Corp.*, Civ. No. 20-cv-1906 (WMW/KMM), 2021 WL 3173702, at *3 (D. Minn. July 27, 2021). A disclaimer is conspicuous when it is in capital letters in the warranty itself. *See Far East Aluminium Works Co. Ltd. v. Viracon, Inc.*, 520 F. Supp. 3d 1106, 1114 (D. Minn. 2021).

Here, James Hardie disclaimed the implied warranties of merchantability and fitness for a particular purpose. The Express Limited Warranty provides:

> **4. DISCLAIMER:**
>
> The statements in this Warranty constitute the only warranty extended by Hardie for the Product. HARDIE DISCLAIMS ALL OTHER WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED **WARRANTIES OF MERCHANTABILITY** OR FITNESS FOR A PARTICULAR PURPOSE . . . .

13

(Am. Compl. Ex. A.)  As in *Viracon*, James Hardie conspicuously disclaimed the implied warranties of merchantability and fitness for a particular purpose.  Accordingly, the Court grants Defendant's motion to dismiss Counts III and IV.[5]

### 4. Minnesota's Unlawful Trade Practices Act, Minn. Stat. § 325D.13, and Minnesota False Statement in Advertising Act (Counts V and VI)

James Hardie argues that these claims fail as a matter of law because they are time-barred, arguing that the claims accrued in 2002.  (Def.'s Mem. at 24–25.)  M.G. Longstreet disputes that the claims are time-barred, alleging that the six-year limitations period began in November 2016.  (Pl.'s Opp'n at 37–39.)  The Court finds these state-law claims time-barred.

Under Minnesota law, "an action based upon a liability created by Minnesota statute is subject to a six year statute of limitation."  *Thunander v. Uponor, Inc.*, 887 F. Supp. 2d 850, 876 (D. Minn. 2012) (finding MUTPA and MFSAA claims time-barred).  Courts have held that the six-year limitations period "begins to run on the date of sale."  *Id.*; *see also Klehr v. A.O. Smith Corp.*, 875 F. Supp. 1342, 1353 (D. Minn. 1995), *aff'd*, 87 F.3d 231

---

[5] The implied-warranty claims are also time-barred.  Implied warranties are not for future performance, and, therefore, accrue upon delivery.  *See Nelson v. Int'l Harvester Corp.*, 394 N.W.2d 578, 582 (Minn. Ct. App. 1986), *overruled on other grounds by Lloyd F. Smith Co. v. Den-Tal-Ez, Inc.*, 491 N.W.2d 11 (Minn. 1992) ("[I]t would be illogical to hold that an implied warranty can explicitly extend to future performance."); *see also Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 876 (8th Cir. 2000) ("Ordinary warranty claims generally accrue upon tender of delivery.").  The period to bring a warranty claim is four years from the date of accrual.  *See* Minn. Stat. § 336.2–725(1).  Based upon the face of the Amended Complaint, M.G. Longstreet purchased the pieces of Sentry Siding between February and June of 2002.  (Am. Compl. ¶¶ 18.) Accordingly, the limitations period ended in June of 2006, making the implied-warranty claims untimely.

(8th Cir. 1996), *aff'd*, 521 U.S. 179 (1997) ("[T]he six year limitations period commenced on the date of sale, 1974, when each of the alleged statutory violations occurred.")  In this case, the sales occurred between February and June of 2002.  Accordingly, from the face of the Amended Complaint, these claims are time-barred.

M.G. Longstreet seeks to circumvent the limitations period by arguing that it begins to run from the date of discovery due to James Hardie's intentional misrepresentations. (Pl.'s Opp'n at 36–39.)  But a party seeking to toll a limitations period due to concealment must do more than make "generalized allegations."  *Thunander*, 887 F. Supp. 2d at 868 ("*Iqbal* and *Twombly* require Plaintiffs to provide factual support for their allegations of fraudulent concealment.").  To make out a facial showing that James Hardie's fraudulent misrepresentations tolled the statute of limitations, M.G. Longstreet was required to allege that James Hardie concealed "the very existence of the facts which established the cause of action," *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 876 (8th Cir. 2000) (quotation marks and citation omitted).

M.G. Longstreet has not done so; in fact, the Amended Complaint makes clear that the Sentry Siding has been in M.G. Longstreet's possession since 2002.  (*See* Am. Compl. ¶¶ 18–19, 21–25, 31–41.)  Similar to *Marvin Lumber*, because the Sentry Siding has been in M.G. Longstreet's exclusive possession, James Hardie could not have fraudulently concealed its claims.  And, like in *Thunander*, M.G. Longstreet's generalized claims in the Amended Complaint do not toll the statute of limitations.  Accordingly, the Court grants Defendant's motion to dismiss Counts V and VI.

### III. CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss [Doc. No. 8] is **GRANTED IN PART, AND DENIED IN PART**, as follows:

1. The Court **GRANTS** Defendant's motion to dismiss Counts II–VI; and
2. The Court **DENIES** Defendant's motion to dismiss Count I.

Dated: November 29, 2021                                  s/ Susan Richard Nelson
                                                          SUSAN RICHARD NELSON
                                                          United States District Judge